UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                          Case No. 2:07-cr-4

v.                                     HON. ROBERT HOLMES BELL

BRIAN PETER BENZIE,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Defendant Brian Peter Benzie is charged in an Indictment with Possession With Intent to Distribute Marijuana and Manufacturing Marijuana, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(vii). Defendant has filed a motion to suppress evidence obtained by police as a result of an alleged illegal search and seizure. The matter has been fully briefed and testimony was presented on October 4, 2007.

On August 17, 2006, the Michigan National Guard, while conducting helicopter surveillance, observed marijuana plants growing on Defendant's camp[1] property. Michigan State Police troopers were radioed and they went to the property where they met Defendant's 18-year-old son, Bruce Benzie. Bruce Benzie was watching his two-year-old sister on the property at the time. Bruce Benzie gave the troopers verbal and written consent to search the property. The troopers discovered four separate marijuana plots. The troopers questioned Bruce Benzie at the camp. Bruce Benzie stated that the camp belonged to his father, that he was not growing marijuana, that he spent

---

[1]"Camp" is a term used in the Upper Peninsula of Michigan to refer to a cottage or dwelling in a remote area used for recreation.

a lot of time at the camp, that his permanent residence was in Three Lakes, that his father spent a lot of time at the camp, and that his father maintained the property. The nearest plot was approximately 75 yards from the camp, down a foot path from the mowed area of the yard. Three other plots were in that area. Bruce Benzie stated that he spent 75 percent of his time at the camp during the summer and identified the bed where he slept.

Defendant argues that the evidence must be suppressed because there was no warrant to search the property, the search occurred within the curtilage of his home, the plants were not in an open field but immediately surrounding the home, the aerial surveillance was improper, and the consent to search was invalid.

A hearing was held on October 4, 2007, during which Officer Mark Joseph Snauko of the Michigan Army National Guard Counter Drug Division testified that he flew over the Benzie property and photographed the area using a hand held camera. Officer Snauko testified that they had received a tip from Ron Koski of the Upper Peninsula Substance Enforcement Team (UPSET), which directed them to fly over the general area. Officer Snauko further testified that he flew no lower than 500 feet above the ground and that he observed certain cultivated areas containing bright green plants which had a distinctive texture. Officer Snauko described this texture as having a "fuzzy look." Officer Snauko testified that he had been conducting aerial searches for drugs for six years and had discovered over 1000 marijuana plots.

Michigan State Police Trooper William Leubs testified that he searched the Benzie property on August 17, 2006, as part of the UPSET team. Trooper Leubs stated that at the direction of Officer Snauko, he entered the property through a closed unlocked gate. Trooper Leubs then proceeded to the main building where he encountered Bruce Benzie. After ascertaining Bruce's

identity, date of birth, and permanent residence, Trooper Leubs informed him that marijuana plants had been observed from the air. Bruce stated that he did not know of any marijuana. Trooper Leubs then indicated that it was not a good idea to have marijuana near the camp and Bruce agreed. Bruce then consented to accompany Trooper Leubs to the nearest plot.

Trooper Leubs testified that the plot of marijuana plants nearest to the main building was approximately 100 yards away and that there was a trail leading to the area. Trooper Leubs also testified that there was a second plot approximately 100 feet from the first plot and a third plot 50 feet from the second plot, with trails leading to each. Trooper Leubs stated that no effort had been made to obtain a warrant. He also conceded that there were no exigent circumstances other than the possible destruction of the plants and that he could have secured the area while he obtained a warrant.

Initially, it is noted that Defendant could not reasonably have expected that his property was immune from examination by an officer seated in an aircraft. *Florida v. Riley*, 488 U.S. 445, 450 (1989). In this case, as in *Riley*, the observation was made from a helicopter, but as noted in that case, "'private and commercial flight [by helicopter] in the public airways is routine' in this country." *Id.* (*citing California v. Ciraolo*, 476 U.S. 207 (1986)). Therefore, no warrant was required for the helicopter surveillance.

A warrantless search of an open field does not violate the Fourth Amendment. In *United States v. Dunn,* 480 U.S. 294 (1987), the Supreme Court held that police officers did not violate the Fourth Amendment when they entered the defendant's property and crossed several fences with no trespassing signs to see inside a barn where they discovered evidence of drug manufacturing, because the officers stood in an open field outside the curtilage surrounding the

defendant's home when they shined a flashlight into the barn. Factors that must be considered when determining whether the discovery was lawful are (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within the enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) steps taken by the resident to protect the area from observation by people passing by. *United States v. Jenkins*, 124 F.3d 768, 772 (6th Cir. 1997).

The warrantless entry of farmland by police officers ignoring no trespassing signs and climbing a fence and a locked gate before discovering potted marijuana plants, did not violate the Fourth Amendment because the discovery was in an open field. *United States v. Burton*, 894 F.2d 188, 190 (6th Cir. 1990). The Fourth Amendment right to be free from a search and seizure without a warrant extends to the curtilage area of a house. *Jenkins*, 124 F.3d at 772. Curtilage includes those areas "to which extends the intimate activity associated with the 'sanctity of a mans' home and privacies of life.'" *Id. citing Oliver v. United States,* 466 U.S. 170, 180 (1984), and *Boyd v. United States*, 116 U.S. 616. 630 (1886). In *Jenkins* a helicopter crew discovered marijuana growing in a wooded field behind the defendant's home. The Sixth Circuit concluded that a small enclosed back yard in close proximity to the home used for such things as planting and drying clothes and well shielded from the public is within the curtilage area of the residence. The defendant lived on a multi-acre farm, which included some heavily wooded land. The defendant's back yard consisted of a neatly trimmed lawn, small trees, a flower garden, and a shed. The wooded field behind the back yard was accessible by a gate. A task force consisting of State Police troopers and National Guardsmen went to the property without a warrant. The defendant was informed that marijuana was growing on the property. She gave the questioning officers directions, the officers parked their

vehicles in the driveway, and began wandering around the defendant's back yard, where the gate leading to the wooded field was found. Various team members and at least one vehicle entered the field from the back yard gate. In the back yard, a green spray can, hog ring containers, pliers, tin snips, and a mothball box were found. Marijuana plants were discovered in the wooded field. The court suppressed the evidence seized from the back yard because the back yard was part of the curtilage. However, the search of the wooded field was considered lawful.

In *United States v. Rapanos*, 115 F.3d 367, 373 (6th Cir. 1997), the Sixth Circuit addressed a situation in which the area at issue was surrounded by a fence and a tall hedgerow of cleared debris, entry onto the land could be made only through a locked gate, and the land had undergone extensive alteration and development for economic purposes and was clearly commercial property. The *Rapanos* court found that none of those factors had any bearing on whether the property was "open fields." *Id.* The Sixth Circuit noted:

> The Supreme Court has defined open fields so broadly that, for constitutional purposes, even property that is neither open nor a field (such as a thickly wooded area) can be treated as an open field. *Oliver,* 466 U.S. at 180 n. 11, 104 S.Ct. at 1742 n. 11. As noted earlier, moreover, the presence of a fence or gate or a "No Trespassing" sign does not engender a reasonable expectation of privacy for Fourth Amendment purposes. *Id.* at 182, 104 S.Ct. at 1743; see also *United States v. Burton,* 894 F.2d 188, 190 (6th Cir.), *cert. denied,* 498 U.S. 857, 111 S.Ct. 157, 112 L.Ed.2d 123 (1990).

*Id.*

In *United States v. Hoskins*, 735 F.2d 1006 (1984), the Sixth Circuit found that the Fourth Amendment does not protect fields which are open and not adjacent to an otherwise protected area, even where there are "no trespassing" signs and the area is accessible only by a private road. *Id.* at 1006-1007. In *Hoskins*, the Kentucky State Police flew over the defendant's property after

receiving a tip from an anonymous informant. The police spotted what they believed to be a marijuana patch. A few days later, members of the State Police and a German Shepard dog traveled over a mountain and through a hollow toward the rear of the defendant's property. A private road in front of the property contained a posted, but overgrown, "no trespassing" sign which the officers passed as they approached the home. The officers received permission from the defendant to search the property and discovered a large plot of marijuana. Referring to the holding in *United States v. Oliver*, the Sixth Circuit noted that society is no longer prepared to recognize as "reasonable" any privacy interest in the parts of a landowner's property which are not directly adjacent to the home. *Hoskins*, 735 F.2d at 1007.

As noted above, the test for determining whether the discovery was lawful includes the following factors: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within the enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) steps taken by the resident to protect the area from observation by people passing by. *United States v. Jenkins*, 124 F.3d 768, 772 (6th Cir. 1997). In this case, the nearest marijuana plants were found in a plot approximately 100 yards from the main building in an ungroomed portion of the property which was accessible by dirt trails. The marijuana plots were not included within the enclosure surrounding the main camp building. *See* Government's Exh. 1-4. The areas in which the marijuana plots were found do not appear to have been used for anything other than to grow marijuana plants. *See* Government's Exh. 1-6. Finally, Defendant did not take any steps to protect the area from observation. Accordingly, the undersigned concludes that the plants were in an "open field" and are not afforded any Fourth Amendment protection.

Therefore, it is recommended that Defendant's Motion to Suppress Evidence (Docket #17) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  October 5, 2007